Rosemary M. Rivas (SBN 209147)
Email: rrivas@finkelsteinthompson.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Plaintiff*

*[Additional Counsel on Signature Page]*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC CHICOREL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INVENSENSE, INC., BEHROOZ ABDI, AMIR FAINTUCH, USAMA FAYYAD, EMIKO HIGASHI, JON OLSON, AMIT SHAH, ERIC STANG, and YUNBEI YU,<br><br>Defendants. | Case No. 5:17-cv-00901<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

### NATURE OF THE ACTION

1. This is a class action brought on behalf of the public stockholders of InvenSense, Inc. ("InvenSense" or the "Company") against InvenSense and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin a proposed transaction announced on December 21, 2016 (the "Proposed Transaction"), pursuant to which InvenSense will be acquired by TDK

Corporation ("Parent") and its wholly-owned subsidiary, TDK Sensor Solutions Corporation ("Merger Sub," and together with Parent, "TDK").

2.  On December 21, 2016, InvenSense and TDK entered into an agreement and plan of merger (the "Merger Agreement"), and issued a joint press release to announce the signing of the Merger Agreement. Pursuant to the terms of the Merger Agreement, stockholders of InvenSense will receive $13.00 per share in cash.

3.  In connection with the Proposed Transaction, on February 3, 2016, defendants filed a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.  The Proxy contains materially incomplete information concerning the underlying inputs in the *Discounted Cash Flow Analysis* conducted by Qatalyst Partners LP ("Qatalyst"), InvenSense's financial advisor, in connection with preparing its fairness opinion, which the Board relied upon in assessing the fairness of the Proposed. Consequently, InvenSense's stockholders are being asked to vote in support of the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein pursuant to Section 27 the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

6.  Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) InvenSense has offices in San Jose, California; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of InvenSense common stock.

9. Defendant InvenSense is a Delaware corporation and maintains its principal executive offices at 1745 Technology Drive, Suite 200, San Jose, California 95110. InvenSense's common stock is traded on the New York Stock Exchange under the ticker symbol "INVN."

10. Defendant Behrooz Abdi ("Abdi") has served as a director of InvenSense since June 2011. Abdi has also served as the Company's President and Chief Executive Officer ("CEO") since October 2012.

11. Defendant Amir Faintuch ("Faintuch") has served a director of InvenSense since October 2014.

12. Defendant Usama Fayyad ("Fayyad") has served as a director of InvenSense since January 2015.

13. Defendant Emiko Higashi ("Higashi") has served as a director of InvenSense since October 2014.

14. Defendant Jon Olson ("Olson") has served as a director of InvenSense since October 2011.

15. Defendant Amit Shah ("Shah") has served as a director of InvenSense since April 2004.

16. Defendant Eric Stang ("Stang") has served as a director of InvenSense since September 2013.

17. Defendant Yunbein Yu ("Yu") has served as a director of InvenSense since March 2008.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action individually and as a class action on behalf of all holders of InvenSense stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

20. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

21. The Class is so numerous that joinder of all members is impracticable. As of December 15, 2016, there were approximately 94,415,309 shares of InvenSense common stock outstanding. These shares are held by thousands of beneficial holders who are geographically

dispersed across the country.

22. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

    a. whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

    b. whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

24. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.

25. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

27. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28. Defendants have acted on grounds generally applicable to the Class with respect to

the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

29. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## SUBSTANTIVE ALLEGATIONS

**MERGER BACKGROUND**

30. In November 2015, InvenSense received an unsolicited oral proposal from "Company A" regarding a potential acquisition of InvenSense. Over the next few months, InvenSense held multiple discussions with Company A, as well as other entities, regarding a potential strategic transaction.

31. In June 2016, following varying levels of interest from other entities concerning a potential strategic transaction, the Board held a regularly scheduled strategic offsite meeting to discuss InvenSense's updated long-range plan. During this meeting, the Board formed a Strategic Committee of Defendants Emiko Higashi, Jon Olson, Amit Shah and Ben Yu, to oversee the process and the negotiation of the terms and conditions of any strategic transaction. As part of the process, 33 entities were contacted, 12 entities who demonstrated interest held meetings with InvenSense or received materials under non-disclosure agreements, based on those meetings eight entities were provided a copy of InvenSense's long-range plan, eight entities were provided proposal process letters, and three entities who made proposals to acquire InvenSense were granted access to InvenSense's data room.

32. Discussions continued between the Company and potential strategic partners, including TDK, throughout the summer and fall of 2016. Specifically, Qatalyst, who the Company engaged on September 27, 2016 to provide financial advisory services, and Company management

continued to reach out to potential counterparties and negotiate with existing interested parties.

33. Following months of discussions with various entities, the Board of Directors held a held a regularly scheduled meeting on October 28, 2016. During this meeting, the Board discussed InvenSense's ongoing exploration of its strategic alternatives, including discussions with 26 potential strategic partners. The Board of Directors noted that of the parties contacted, two companies, Company A and TDK, had submitted proposals, nine other entities had declined to submit proposals, and the remainder were in various stages of discussions with InvenSense and representatives of Qatalyst Partners. After reviewing the offers, the Board directed management to continue to negotiate with, and attempt to obtain a higher per share proposal from, Company A and TDK. With regard to TDK, the Board authorized management to pursue a price of $14 per share.

34. Negotiations with TDK continued throughout the fall of 2016. On December 6, 2016, TDK increased its offer to $12.50 per share, and shortly thereafter, on December 8, 2016, representatives of TDK increased the offer to $13.00 per share.

35. On December 9, 2016, the Board held a telephonic meeting to discuss the current interest regarding a potential strategic transactions. After contacting or receiving inquiries from 33 parties, including four additional parties contacted at the direction of the Board of Directors, as well as two more parties that had contacted InvenSense or Qatalyst since the prior meeting of the Board of Directors on October 28, 2016, the process had still resulted in formal proposals from only two companies, Company A and TDK.

36. Discussions with TDK regarding a strategic transaction had been on-going since early 2016, and were nearly finalized when the Board met on December 9, 2016. The potential merger with TDK contemplated a proposed offer price of $13.00 per share. However, this price

7
CLASS ACTION COMPLAINT

point was deemed unsatisfactory to the Board, and management was continually directed to negotiate for a higher price.

37. In addition to formal proposals from TDK and Company A, a relatively late entrant to the process, Company O, indicated in November of 2016 that it intended to pursue a potential acquisition of InvenSense. Negotiations with Company O continued intermittently through November and December, and on December 15, 2016, a representative of Company O sent representatives of Qatalyst a non-binding, written indication of interest to acquire for cash all of the outstanding common stock of InvenSense at a price of $15.00 per share.

38. On December 16, 2016, the Board of Directors held a telephonic meeting to discuss InvenSense's ongoing negotiations with TDK Corporation and Company O's proposal. Following this meeting, the Board directed management to continue discussions with TDK, and continue to pursue a higher price, but the Board ultimately settled on the $13.00 per share price from TDK.

39. Shortly thereafter, on December 20, 2017, the Board held a telephonic meeting to review the proposed final draft of the Merger Agreement. During this meeting, a representative of Qatalyst presented to the Board Qatalyst's financial analysis of the $13.00 per share cash consideration to be offered to InvenSense's stockholders in the proposed merger, responded to questions from members of the Board of Directors regarding its financial analysis, and proceeded to deliver Qatalyst Partners' oral opinion to the Board, subsequently confirmed by delivery of a written opinion, that the $13.00 in cash per share merger consideration to be received by the holders of InvenSense's common stock was fair, from a financial point of view, to such holders. Following this review, the Board concluded that the consideration reflected in the Merger Agreement was the best transaction that could be obtained by InvenSense from TDK at the time,

and that there was no assurance that a more favorable alternative transaction would arise later at levels equal to or greater than the value of the merger consideration.

40. After further discussion, the Board unanimously: (i) determined that the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, on the terms and subject to the conditions set forth therein, were fair to and in the best interests of the Company and its stockholders; (ii) approved and declared advisable the Merger Agreement and the transactions contemplated thereby; and (iii) resolved to recommend the approval and adoption of the Merger Agreement and the Merger by the stockholders of InvenSense.

41. The Merger Agreement was executed on December 21, 2016, and the two companies announced the execution of the Merger Agreement that same day.

**THE MERGER ANNOUNCEMENT**

42. In a press release dated December 21, 2016, InvenSense announced that it had entered into the Merger Agreement with TDK pursuant to which TDK will acquire all outstanding shares of InvenSense in a transaction valued at approximately $1.3 billion. As a result of the Merger, InvenSense will become a wholly-owned subsidiary of TDK.

43. The press release states in pertinent part:

> TOKYO, Japan, SAN JOSE, California, U.S.A., December 21, 2016 – TDK Corporation (President and CEO: Shigenao Ishiguro, hereinafter referred to as "TDK") and InvenSense, Inc. (President and CEO: Behrooz Abdi, hereinafter referred to as "InvenSense") entered into a definitive agreement today wherein TDK agrees to acquire all of the outstanding InvenSense shares for cash at an acquisition price of USD 13.00 per InvenSense share, for a total acquisition price of USD 1.3 billion. The transaction has been unanimously approved by the Boards of Directors of both companies. Completion of the transaction is expected in second quarter of the fiscal year ending March 31, 2018, and is subject to approvals by InvenSense shareholders and the relevant regulatory authorities. The acquisition will be completed through a merger of a newly created subsidiary of TDK with and into InvenSense, with InvenSense continuing following the merger as a wholly-owned subsidiary of TDK.
>
> TDK's current medium-term (3-year) management plan ending in March 2018

focuses on the importance of three areas: a) automotive, b) manufacturing devices and energy, and c) Information and Communications Technology (ICT). As part of its strategy for growth in these key areas, TDK has identified sensors and actuators, energy units and next-generation electronic components as three product areas for strategic growth aimed at unlocking new business opportunities in the fields of Internet of Things (IoT). Sensors are viewed as an important IoT-enabling technology and TDK envisions greatly expanding this portion of its business and providing a broad range of sensor solutions to its customers. TDK currently sells magnetic sensors that employ thin-film magnetic technology, which TDK has accumulated through its endeavors with hard disk drive (HDD) solutions over many years. Further, TDK's product line includes pressure, temperature, electric current, and various other sensor types, and TDK plans to expand its sensor business going forward.

Through the acquisition of InvenSense, TDK will be able to strengthen its product line-ups and technologies, which is expected to enable the combined company to become a stronger player in broad based sensor solutions for IoT, automotive and ICT by accelerating the sensor product roadmap to offer innovative next generation products and platforms. In addition, sensor fusion, the combination of various sensor technologies and software creates products with enhanced value solutions for customers across multiple fields.

InvenSense is a world forerunner in motion sensor solutions, known mostly for its flagship six-axis and nine-axis motion sensors, which are used in some of the world's most advanced consumer products and applications. In recent years its portfolio has expanded with additional solutions for inertial, environmental, microphone, and ultrasonic sensors. InvenSense's "fabless" manufacturing model enables development of high-performance and cost effective products via its unique CMOS-MEMS production process. Enhanced by its value-added software solutions, InvenSense has expanded rapidly to become a worldwide strong player in sensors for consumer devices including smartphones, drones, wearables, gaming, inertial navigation, and both optical and electronic image stabilization for cameras. Looking ahead, growth avenues beyond mobile include large addressable opportunities in the fields of IoT, automotive, and industrial, driven by increasing consumer demand of indoor navigation, Virtual Reality (VR), Augmented Reality (AR), and Advanced Driver Assistance Systems (ADAS).

The acquisition will enable TDK to combine InvenSense's advanced suite of sensor and software platforms with its wide-ranging portfolio of magnetic, pressure, temperature, and microphone sensors. In addition, sensor fusion, combining various types of technologies and product line-up, creates products with high added value. Sensor fusion combines multiple sensors and software solutions that enables TDK to expand its business in the three key areas and further strengthening of its position as a global player in the sensor business, which is one of TDK's strategic growth products.

In January 2016, TDK established a joint venture with Qualcomm Incorporated, called RF360 Holdings Singapore PTE, Ltd., and has also entered into agreements to expand technical cooperation in a wide range of fields including passive components, batteries, wireless power transfer, sensors, MEMS and various other next-generation technologies for mobile communications, IoT, and automotive. This joint venture presents an exciting opportunity for InvenSense to expand its customer base in ICT (Information and Communications Technology), IoT and automotive areas while enabling InvenSense to provide sensor solutions with increased synergies.

As the fields of ICT, automotive and industrial experiences growing demand for sensors, TDK, together with InvenSense, expect to provide unique products and sensor expertise across sales channels and a global customer base that TDK and InvenSense have each cultivated over several years. TDK and InvenSense are resolved to exhibit the same level of commitment to providing customers with quality, expert solutions and customer service as a combined company.

TDK's President and CEO, Mr. Shigenao Ishiguro, made the following statement regarding the acquisition:

"TDK's sensor business, one of its strategic growth areas, can be strengthened by merging TDK's portfolio of magnetic sensor technologies (where its strength lies) and its wide range of sensor products with InvenSense's expanding sensor technology. This acquisition is a fundamental element in TDK's strategy to provide unique and high-value-added products and services in IoT. We aim to become a strong player in the sensor business with InvenSense as our perfect partner."

InvenSense's President and CEO Behrooz Abdi made the following comment:

"This is an exciting day for InvenSense as our proposed acquisition by TDK represents what we view as a compelling win for InvenSense's shareholders, customers and employees. TDK understands the value of InvenSense's suite of sensor and software platforms. This merger is the culmination of years of innovation and execution by our world-class employees. Together with TDK, we see a bright future that leverages our commitment to innovation with TDK's scale, significant partner relationships and distribution channel. Our strategic goals are aligned, and we are confident that together with TDK we will accelerate our roadmap to provide next-generation sensor technologies in key fields for the world's most innovative companies."

In connection with the acquisition, BofA Merrill Lynch is acting as TDK's exclusive financial advisor and Jones Day is acting as legal counsel to TDK. Qatalyst Partners is acting as exclusive financial advisor and Pillsbury Winthrop Shaw Pittman LLP is acting as legal counsel to InvenSense.

44.   As noted in both the press release and Merger Agreement, InvenSense stockholders

11
CLASS ACTION COMPLAINT

will have the right to receive, in exchange for each share of InvenSense common stock, $13.00 in cash.

**THE PROXY STATEMENT OMITS MATERIAL INFORMATION, RENDERING IT FALSE AND MISLEADING**

45. Defendants caused the Proxy to be filed with the SEC, and the Proxy has been published on the SEC's online EDGAR database. The information contained in the Proxy has been disseminated to InvenSense's stockholders to solicit their vote in favor of the Proposed Transaction.

46. With respect to Qatalyst Partners' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:  (i) the terminal value of the Company; (ii) the estimated debt outstanding of the Company; (iii) the net of the estimated cash balance of the Company; (iv) management's basis for projecting a dilution factor of approximately 19%; (v) the inputs and assumptions used to calculate the discount rate range of 11.0% to 17.5%; (vi) the estimated debt outstanding and estimated cash balance as of December 31, 2016, as provided by the Company's management; and (vii) the number of fully diluted shares of InvenSense common stock outstanding as of December 15, 2016, as provided by InvenSense's management.

47. Theses specific inputs to Qatalyst's *Illustrative Discounted Cash Flow Analysis* are particularly material to stockholders decision regarding whether to vote in favor of the Proposed Transaction or seek appraisal for their shares.  Given the fact that Company O offered $15.00 per share and the implied a range of values in Qatalyst's *Illustrative Discounted Cash Flow Analysis* was $11.61 to $19.63 per share, the $13.00 per share consideration offered in the Proposed Transaction seems low.  Without disclosures of the above-listed inputs to the *Illustrative Discounted Cash Flow Analysis,* stockholders have no way to determine whether Qatalyst intentionally manipulated the analysis to make the $13.00 per share consideration fall into the

12
CLASS ACTION COMPLAINT

implied range of value, and therefore seem fair.

48. Without the omitted information, InvenSense stockholders cannot make an informed decision regarding whether or not to vote in favor of the Proposed Transaction or seek appraisal for their shares.

49. Moreover, the omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger"; (iii) "Recommendation of the Board of Directors"; (iv) "Certain Prospective Financial Information"; and (v) "Opinion of InvenSense's Financial Advisor." The Board had the benefit of considering the underlying inputs to Qatalyst's analyses in determining to vote in favor of the Proposed Transaction. Presenting the results of the analysis without the underlying inputs here, given the circumstances, is misleading and renders the Proxy Statement misleading.

50. Accordingly, based on the foregoing disclosure deficiencies in the Proxy, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will suffer, absent judicial intervention, if InvenSense's stockholders are required to vote on the Proposed Transaction without the above-referenced material misstatements and omissions being remedied.

## COUNT I

**(i) Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and InvenSense**

51. Plaintiff repeats all previous allegations as if set forth in full herein.

52. The Proxy Statement violates Section 14(a) of the Exchange Act and SEC Rule 14a-9 because it omits material facts, including those set forth above, which render the Proxy Statement false and/or misleading.

53. Section 14(a) and Rule 14a-9 promulgated thereunder require full and complete disclosure in connection with Proxy Statements. Rule 14a-9 provides that communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

54. As more fully described above, InvenSense and the Individual Defendants made materially misleading statements, and omitted to disclose necessary material facts, in the Proxy Statement that it filed in connection with its merger with TDK. Specifically, the Proxy omits material facts concerning the financial projections for InvenSense that were relied upon by the Board in assessing the fairness of the merger and by Qatalyst in connection with the preparation of their fairness opinion.

55. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants undoubtedly had access to and/or reviewed the omitted material information and were aware of their duty to disclose this information in the Proxy Statement. Despite these issues, the Individual Defendants disseminated the materially misleading Proxy Statement, which contained statements that, in violation of Section 14(a) and Rule 14a-9, and in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially misleading statements, as the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. InvenSense is liable as the issuer of these statements.

56. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the stockholder vote on the proposed Merger Agreement. The Proxy Statement is the primary vehicle by which Plaintiff and the Company's stockholders can evaluate the Proposed Transaction, and therefore is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction. The omissions and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

57. By reason of the foregoing, InvenSense violated and, unless enjoined, will again violate Section 14(a) and Rule 14a-9 thereunder. Because of the materially misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### (ii) Claim for Violation of Section 20(a) of the 1934 Act
### (iii) Against the Individual Defendants

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. The Individual Defendants acted as controlling persons of InvenSense within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of InvenSense and participation in and/or awareness of the Company's operations and/or intimate knowledge of the misleading statements contained in the Proxy Statement that was filed with the SEC, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of InvenSense,

including the content and dissemination of the various statements that Plaintiff contends are materially misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected. Additionally, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

61.     In fact, the Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Furthermore, as set forth in the Proxy Statement, and as described briefly herein, the Individual Defendants were intimately involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

# PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

# JURY DEMAND

Plaintiff respectfully demands a trial by jury.

Dated: February 22, 2017      **LEVI & KORSINSKY LLP**

By: /s/ *Rosemary M. Rivas*
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94111
Tel: (415) 291-2420
Fax: (415) 484-1294

Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
LEVI & KORSINSKY LLP
1101 30th Street NW, Suite 115

17
CLASS ACTION COMPLAINT

Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com

*Counsel for Plaintiff Marc Chicorel and the Proposed Class*

CLASS ACTION COMPLAINT